U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR - 8 2018

TONY R. MOORE, CLERK
BY: _____
      DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RAYMOND K. ABBIW | CIV. ACTION NO. 6:16-501 |
| -vs- | UNASSIGNED DISTRICT JUDGE |
| FRANKS INTERNATIONAL, LLC | MAG. JUDGE HANNA |

## MEMORANDUM RULING

Before the Court in this discrimination suit is an unopposed Motion for Reconsideration, or Alternatively, Motion for Summary Judgment (Doc. 51), filed by Defendant Frank's International, LLC.[1] Pursuant to the motion, Defendant seeks reconsideration of the Court's September 6, 2016 Judgment finding Defendant had failed to show Plaintiff's suit was untimely filed as a matter of law. Doc. 40. Alternatively, Defendant moves for summary judgment, dismissing Plaintiff's suit with prejudice. Id. For the reasons that follow, Defendant's Motion for Reconsideration is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's suit is **DISMISSED WITH PREJUDICE.**

### I. Factual and Procedural Background

On September 23, 2016, Plaintiff Raymond K. Abbiw, a black man who is a native of Ghana, filed this suit against his former employer, Frank's International, alleging Defendant subjected him

---

[1] Any opposition to the motion was due on or before October 4, 2017. See Local Rule 7.5; see also Doc. 52. On November 29, 2017, the Court *sua sponte* extended the deadline for submission of Plaintiff's memorandum in opposition, stating in pertinent part, "[Plaintiff's] memorandum . . . must be RECEIVED by the Court on or before Wednesday, December 20, 2017, or the motion will be deemed unopposed." Doc. 59. As no opposition has been filed to date, the motion for reconsideration is deemed unopposed. Id.; see also Doc. 52.

to discrimination on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Doc. 1. Specifically, Plaintiff contends Defendant discriminated against him in the form of disparate treatment, subjected him to a hostile working environment, and terminated his employment in retaliation for his complaints about the hostile working environment. Id. at ¶¶ 1, 18, 33, 44 and 45. Plaintiff additionally asserts a claim of "negligent hiring" pursuant to Louisiana state law. Id. at ¶¶ 13-14, 46.

On April 25, 2016, Defendant filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), arguing Plaintiff's suit was not timely filed and should therefore be dismissed. Doc. 21. According to Defendant, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right-to-sue letter on September 29, 2015, and because Plaintiff's suit was not filed until January 23, 2016 (i.e., more than ninety days after a right-to-sue letter was issued and presumptively received by Plaintiff), Plaintiff's suit is untimely. Doc. 21-1 at pp. 2-5. On May 5, 2016, the Motion to Dismiss was referred to the Magistrate Judge for Report and Recommendation. Doc. 24. Thereafter, Plaintiff responded to the motion by arguing he did not receive the right-to-sue letter until November 6, 2015, and therefore his suit was timely filed. Doc. 28. In the alternative, Plaintiff argued the ninety-day deadline for filing suit should be equitably tolled. Id. Because both parties submitted evidence with their briefing, the Magistrate Judge converted the motion to dismiss into a motion for summary judgment and allowed the parties to supplement the record with any additional summary judgment evidence. Doc. 33; see also Docs. 34 and 35. On July 8, 2018, the Magistrate Judge issued his Report and Recommendation, wherein he recommended Defendant's motion for summary judgment be

denied, finding Plaintiff's suit was timely filed.[2] Doc. 36 at 12-13. The Magistrate Judge reasoned that although the EEOC issued a right-to-sue letter to Plaintiff on September 29, 2015, "defendant did not submit any evidence proving when the plaintiff received the right-to-sue letter." Doc. 36 at 10. Because Plaintiff submitted evidence supporting his position that he did not *receive* the right-to-sue letter until November 6, 2015, and because Defendant submitted no evidence "establishing that the letter was received on any other date," the Magistrate Judge ultimately recommended Defendant's motion be denied for failure to show suit was untimely filed as a matter of law. Id. at 11. On August 31, 2016, over the objection of Defendant, the Court adopted the findings and conclusions of the Magistrate Judge and denied Defendant's motion. Doc. 40.

Defendant now seeks reconsideration of the foregoing Judgment. Doc. 51. Defendant argues the Court should reconsider and reverse its prior Ruling, because: (1) the Court's Ruling is "directly contrary" to the Fifth Circuit's decision in Gamel v. Grant Prideco, L.P., 625 Fed.Appx. 690 (5th Cir. 2015); and (2) "Defendant has newly discovered evidence that it could not have discovered with due diligence at the time of filing its motion to dismiss." Doc. 51-1 at 8. Alternatively, Defendant seeks summary judgment in its favor as to all claims asserted by Plaintiff, arguing Plaintiff cannot satisfy his prima facie burdens, and therefore Defendant is entitled to judgment as a matter of law. The Court first addresses Defendant's Motion for Reconsideration.

## II. Motion for Reconsideration

### A. Standard of Review

Reconsideration of interlocutory orders is governed by Fed. R. Civ. P. 54(b). Austin v.

---

[2] Because the Magistrate Judge found Plaintiff's suit was filed less than ninety days after he received the right-to-sue letter, the Magistrate Judge did not address Plaintiff's argument that the filing deadline should be equitably tolled. Doc. 36 at 2.

Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir.2017). Rule 54(b) states in pertinent part, "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Austin, 864 F.3d at 336 (internal quotation marks omitted). "Although the district court's discretion in this regard is broad, it is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." Castrillo v. American Home Mortg. Servicing, Inc., 2010 WL 1424398, *3 (E.D.La.) (citing Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1414–15 (5th Cir.1993); 18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4478.1 (2d ed. 2002)). "[A] successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." U.S. v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997).

B.  **Applicable Law**

Prior to pursuing claims in federal court, a plaintiff alleging employment discrimination must exhaust his administrative remedies. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-89 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right-to-sue. Id. at 389. Title VII provides that claimants have ninety days to file

a civil action "after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1).[3] The jurisprudence in this circuit interprets the foregoing provision as requiring a plaintiff to file a civil action no more than ninety days after *receipt* of such notice. Duron v. Albertson's LLC, 560 F.3d 288, 290 (5th Cir. 2009) (per curiam); Taylor at 379. The requirement that suit be filed within ninety days of receipt of notice of the right-to-sue is "strictly construed."[4] Taylor at 379. Thus, in this matter, whether Plaintiff's suit was timely filed depends upon whether Plaintiff received notice of the right-to-sue from the letter issued on September 29, 2015, or from the letter received by Plaintiff on November 6, 2015.

The Fifth Circuit holds "the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period unless the claimant, through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice." Espinoza v. Missouri Pacific R. Co., 754 F.2d 1247, 1250 (5th Cir. 1985). "[T]he 90-day period of limitation established by 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." Ringgold v. Nat'l Maint. Corp., 796 F.2d 769, 770 (5th Cir.1986). "[W]here the date of receipt is not known, courts should apply a presumption that the plaintiff received the notice in three days." Jenkins v. City of San Antonio Fire Dept., 784 F.3d 263, 267 (5th Cir. 2015). "Such a presumption is unnecessary and inappropriate, of course, if there is other evidence showing a date

---

[3] 42 U.S.C. § 2000e-5(f)(1) provides that if the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission . . . shall so notify the person aggrieved and within *ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge. . . ." (Emphasis added).

[4] The requirement that a plaintiff commence an action within ninety days of receipt of a right-to-sue letter is not a jurisdictional prerequisite; "rather, the ninety-day requirement is akin to a statute of limitations." Espinoza v. Missouri Pacific R. Co., 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). Because the ninety-day requirement is "a nonjurisdictional precondition to suit," it may be subject to tolling and waiver. Id.

of receipt earlier or later, such as postal evidence or testimony from the plaintiff or other persons with personal knowledge." Id. at 267 n.3. For the presumption to apply, there must be "sufficient evidence that the letter was actually mailed." Duron, 560 F.3d at 290 (quoting Custer v. Murphy Oil USA, Inc., 503 F.3d 415, 419 (5th Cir. 2007)). The Fifth Circuit has found the following evidence sufficient to trigger the presumption: a sworn statement regarding normal mailing procedures; deposition testimony showing customary mailing practices used in the sender's business; a sworn statement attesting that the letter was properly directed and placed in a post office mail receptacle. Duron at 290-91; United Student Aid Funds Inc. v. Muracombi Enterprises Inc., 330 Fed.Appx. 453, 455-56 (5th Cir. 2009).

C. Analysis

Defendant asserts reconsideration of the Court's Judgment is warranted, arguing first that the Court's Ruling is "directly contrary" to the Fifth Circuit's decision in Gamel v. Grant Prideco, L.P., 625 Fed.Appx. 690 (5th Cir. 2015). Doc. 51-1 at 8. The Court disagrees as it finds Gamel is distinguishable on its facts. In Gamel, in support of its position that plaintiff's Title VII suit was untimely filed, defendant submitted: (1) plaintiff's right-to-sue letter reflecting May 20, 2014 as the "Date Mailed"; (2) the EEOC's internal case log indicating the letter was mailed on May 2, 2014; and (3) the affidavit of "an EEOC employee whose job include[d] mailing right-to-sue letters," wherein the EEOC employee attested "her records show[ed] she mailed the right-to-sue letter on May 20, 2014." Id. at 692.

In this matter, Defendant has submitted only the right-to-sue letter, stamped "September 29, 2015" in the "Date Mailed" field, and an internal EEOC case log noting the right-to-sue letter was mailed on September 29, 2015. Doc. 21-3; Doc. 35-1 at 4. Unlike cases where the three-day

presumption of receipt has been applied, here Defendant has produced no direct testimony showing the date on which the EEOC sent notice of the right-to-sue, nor any evidence of the EEOC's customary mailing practices. This Court has located no Fifth Circuit opinion where the presumption of receipt was triggered by the foregoing evidence, without accompanying evidence of the sender's customary mailing practices or direct testimony that a particular letter was properly mailed. See Custer at 422 ("[W]here the employee's assertion of non-receipt is supported by circumstantial evidence, and the employer provides an equally weak assertion that notice was mailed, the issue of mailing should not be decided at summary judgment."); Duron at 291 (summary judgment was improper where the only evidence of mailing was a copy of the right-to-sue letter); Zamora v. GC Services, L.P., 647 Fed.Appx. 330, 332 (5th Cir. 2016).

Defendant's second argument in support of reconsideration is that it has obtained "newly discovered evidence that it could not have discovered with due diligence at the time of filing its motion to dismiss." Doc. 51-1 at 8. In an affidavit previously submitted by Plaintiff, Plaintiff stated he moved during the period of time the EEOC was investigating his claim. Doc. 28-1 at ¶ 6. According to Defendant, it recently learned during discovery that Plaintiff actually moved three times while the EEOC was investigating his claim. Doc. 51-1 at 14. Defendant contends this information shows Plaintiff "attempt[ed] to mislead this Court by suggesting that Plaintiff was without fault in his alleged failure to receive the original right-to-sue letter that was mailed in September . . . ." Id. Defendant continues, "Because the undisputed facts now demonstrate that Plaintiff egregiously failed to comply with 29 C.F.R. § 1601.17(b) [sic] by 'provid[ing] the [EEOC] with notice of any change in address . . . during the Commission's consideration of the charge,'

. . . Plaintiff's Title VII claims should be dismissed as a matter of law due to their untimeliness."[5] Id. (quoting 29 C.F.R. § 1601.7(b)). The Court finds Defendant's argument unpersuasive, as it does not alter the reasoning underlying the Court's Judgment.[6] Defendant has still failed to show Plaintiff's suit was untimely filed as a matter of law. Accordingly, Defendant's motion is denied to the extent it seeks reversal of this Court's prior Judgment.

### III. Motion for Summary Judgment

#### A. Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

---

[5] 29 C.F.R. § 1601.7(b) requires a Title VII claimant "to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge."

[6] The Court additionally notes this is not a case where there was a lack of diligence or failure to monitor the status of the claim by the Plaintiff. See e.g. Duron at 291 n.13 ("a lack of diligence on the part of a claimant, e.g. failure to file a suit or contact the EEOC within 270 days of filing a charge with the EEOC . . . may support a conclusion that an action is barred as untimely as a matter of law"). According to the EEOC's "Charge Detail Inquiry," Plaintiff called the EEOC to inquire about the status of his case on October 18, 2013, October 21, 2013, April 11, 2014, and August 18, 2015. Doc. 32-1 at 3-4. On September 22, 2015, the EEOC scheduled Plaintiff's claim for closure. Id. at 4. The same day, the EEOC called Plaintiff's cellular telephone and left a message on Plaintiff's voicemail. Id. On November 2, 2015, Plaintiff again called the EEOC, updated his address, and advised he was offshore when the right-to-sue letter was sent and requested a new copy of the letter. Id. at 4.

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir.2001); see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(alterations in original)(quoting Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

B.   **Applicable Law**

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff can prove

a claim of intentional discrimination by either direct or circumstantial evidence." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir.2000). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e. unlawful discrimination) without any inferences or presumptions." Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 958 (5th Cir.1993). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Russell at 222.

In a matter involving proof via circumstantial evidence, plaintiff must first establish a prima facie case of unlawful discrimination. Id. To establish a prima facie case, the plaintiff must produce evidence that he: "(1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class." Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir.2017). If a plaintiff is successful in establishing a prima facie case of discrimination, the burden then shifts to defendant to produce a legitimate, non-discriminatory justification for its actions. Russell at 222. "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Id. "If the employer is able to articulate a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." Alkhawaldeh at 426 (internal quotation marks omitted).

C.  **Disparate Treatment**

1.  **Termination based upon a protected class**

Plaintiff contends he was terminated by Defendant on September 13, 2013 due to his race and national origin. Doc. 1 at ¶¶ 26, 32. Defendant concedes, for purposes of this motion only, that Plaintiff can establish the first three elements of his prima facie burden. However, Defendant contends Plaintiff cannot satisfy the fourth element - that Plaintiff was treated less favorably than others similarly situated - "because Plaintiff is unable to provide any evidence of disparate treatment." Doc. 51-1 at 17. In support of its argument, Defendant cites to a portion of Plaintiff's deposition testimony, wherein Plaintiff testified he was unaware of any other employee who Defendant believed had damaged a piece of equipment, failed to report it, and was not terminated. Id. at 17. Plaintiff further testified he was unaware of any employee who Defendant believed was insubordinate but was not terminated. Id. at 17.

As recently stated by the Fifth Circuit:

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

Alkhawaldeh at 426 (alterations in original) (quoting Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)). In this matter, Plaintiff has failed to meet the fourth element of his prima facie burden, as he has presented no evidence that he was treated less favorably than others similarly situated outside of his protected class. Accordingly, Plaintiff's claim that his termination violated Title VII must be dismissed. See Alkhawaldeh at 426-27 (Plaintiff's disparate treatment claim was

properly dismissed where plaintiff failed to identify a single non-Jordanian Muslim Arab Functional Scientist/Functional Leader in his department who received the lowest rating on the employer's scale, completed the employer's Performance Improvement Plan, but was not fired).

## 2. Compensation Discrimination

Defendant seeks dismissal of Plaintiff's claim for discrimination "on the basis of his race and/or national origin when he was denied per diem during the time he spent training in Houma."[7] Doc. 51-1 at 28. Reading the Complaint liberally, Plaintiff alleges he was subjected to discrimination on the basis of his race and/or national origin when he was denied per diem during the time he spent training in Houma, Louisiana. Doc. 1 at ¶¶ 21-22, 25. According to the Complaint, on May 2, 2013, at Plaintiff's request, Plaintiff was transferred to a new position which required six months of training in Houma, Louisiana.[8] Id. at ¶¶ 19-21. At the time of his transfer Plaintiff was advised by his supervisor that he would not be reimbursed for his hotel or transportation. Id. at ¶ 21. Plaintiff contends he then went to the Director of Human Resources "to plead with her to meet [Plaintiff] half way by paying part of his lodging." Id. at ¶ 22. According to Plaintiff, the Director "then told him that the company will pay $50.00 per diem for each day of training at that location." Id. After a month of training, Plaintiff asked to be reimbursed, "only to be told that management had decided not to pay even the per diem which they had promised to pay." Id. at ¶ 25. According to Plaintiff, "other employees" advised Plaintiff "the company always paid their expenses each time they were

---

[7]It is not entirely clear to the Court whether Plaintiff has actually brought a claim of compensation discrimination, or whether this is merely a remedy Plaintiff seeks (i.e. reimbursement of his expenses while training in Houma). See Doc. 43 at ¶ 4. Out of an abundance of caution, the Court will presume Plaintiff is asserting a claim of compensation discrimination.

[8]Plaintiff appears to have only actually trained for one month at the Houma location. Doc. 1 at ¶¶ 23, 25.

sent to Houma location." Id.

Defendant asserts Plaintiff cannot meet his prima facie burden on this claim, "because Defendant's refusal to pay Plaintiff per diem does not constitute an 'adverse employment action.'" Doc. 51-1 at 28. For Title VII discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002), overruled on other grounds, Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (quoting Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003)).

First, the Court notes Plaintiff has failed to show he was treated less favorably than others similarly situated outside of his protected class. Plaintiff does not identify the race or national origin of the "other employees" who allegedly told him their expenses were reimbursed. Nevertheless, even assuming there is an issue of fact as to whether similarly situated employees outside of Plaintiff's protected class were treated differently, the Court finds Plaintiff has failed to establish an adverse employment action supporting his discrimination claim. Failure to pay Plaintiff per diem is simply not an ultimate employment decision or a significant change in compensation or benefits. See Turner v. DynMcDermott Petroleum Operations Co., 2010 WL 4363403, at *3 (E.D.La.) ("The denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary.") (quoting Tyler v. Ispat Inland Inc., 245 F.3d 969, 972

(7th Cir. 2001)).

### D. Hostile Work Environment

Plaintiff alleges he was subjected to a hostile work environment, based upon the following events: Plaintiff's co-worker, Scott Comeaux, called him an "illegal immigrant," told him he did not like sharing a room with him, told him to "shut the f–k up punk," and made disparaging comments to Plaintiff such as "your people are barbarians who ride giraffes, elephants and live in huts." Doc. 1 at ¶¶ 10-12. Another co-worker, Joseph Menard, Jr., cussed at Plaintiff, threatened to hit and choke Plaintiff, and stated he would hurt Plaintiff when they were back on shore. Id. at 12.

The creation of a hostile work environment through harassment is a form of prohibited discrimination under Title VII. E.E.O.C. v. Boh Bros. Const. Co., L.L.C., 731 F.3d 444, 452 (5th Cir. 2013). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). To succeed on a claim of hostile work environment, a plaintiff must show he or she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or national origin]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir.2012) (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002)); see also Boh Bros., 731 at 453. Defendant argues Plaintiff cannot meet the fourth and fifth elements of his prima facie claim.

Harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey, 286 F.3d at 268 (quoting Harris, 510 U.S. at 21). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Septimus v. Univ. of Hous., 399 F.3d 601, 611 (5th Cir. 2005). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" Hernandez, 670 F.3d at 651 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). "Although '[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive' to support evidence of a Title VII violation, DeAngelis . El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995), 'simple teasing, offhand comments, and isolated incident, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." Turner v. Baylor Richardson Medical Center 476 F.3d 337, 347-48 (5th Cir. 2007) (quoting Hockman v. Westward Communications, LLC, 407 F.3d 317, 328 (5th Cir. 2004)).

Defendant argues Plaintiff's allegations, accepted as true for purposes of this motion, do not constitute actionable harassment, for two reasons. First, Plaintiff has presented "no evidence that Menard's alleged threat to strike him was based upon any discriminatory animus towards Plaintiff's race or national origin." Doc. 51-1 at 19. The Court agrees. Plaintiff has presented no evidence that Menard's actions were based on race or national origin. Accordingly, Menard's actions do not support a claim of hostile work environment. Hernandez at 652 (Evidence of hostility towards

plaintiff was properly rejected where there was no evidence that the actions were based on race).

Second, Defendant argues Plaintiff's claim fails because "Comeaux's alleged comments were not sufficiently severe or pervasive to alter the terms of Plaintiff's employment because they were nothing more than isolated comments or stray remarks." Doc. 51-1 at 20. Again, the Court agrees. The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms[,] conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." Jones v. Flagship Intern., 793 F.2d 714, 720 (5th Cir. 1986) (alterations in original). "'[S]poradic use of abusive language' is outside of Title VII's purview." Dailey v. Shintech, Inc., 629 Fed.Appx. 638, 644 (5th Cir. 2015) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); see also Harilall v. University Health System Development Corp., 174 F.3d 197, *4 (5th Cir. 1999) ("Wetback" and "illegal alien" comments were insufficient to constitute "pervasive harassment actionable under Title VII"); Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 341-42 (5th Cir. 2007) (Repeated references to "ghetto children," statement that African-American students attended evening college classes because they could not qualify for regular admission, and negative comments about plaintiff's lifestyle were insufficient to demonstrate a hostile work environment); Dailey, 629 Fed.Appx. at 640, 644 (Allegations plaintiff's supervisor had called plaintiff a "black little motherf—r" on at least two occasions and told plaintiff he would "kick his black a—s" did not rise to the level of "severe or pervasive" harassment); Baker v. FedEx Ground Package System Inc., 278 Fed.Appx. 322, *5 (5th Cir. 2008) (Supervisor's comments that "she did not want to work with people like" plaintiff and that "whites rule" were insufficiently severe and did not unreasonably interfere with plaintiff's work performance). In this matter, because Comeaux's alleged comments were sporadic, and because Plaintiff has failed to show the comments

"affected a term, condition, or privilege of employment," Plaintiff's claim of hostile work environment must be dismissed.[9]

### E.     Retaliation

Plaintiff alleges he was terminated in retaliation for engaging in a protected activity. Doc. 1 at ¶¶ 32-33. Specifically, Plaintiff alleges on April 24, 2013, he "submitted a written complaint of racially charged abuse and humiliation by his coworkers Menard and Comeaux to the company HR Director Brandi Ledet." Id. at ¶ 18. Plaintiff does not specifically identify any acts of retaliation by Defendant. The Court will infer that Plaintiff contends his termination on September 13, 2013 was in retaliation for Plaintiff's complaint to the Human Resources Department on April 24, 2013.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation under Title VII, a plaintiff must show that '(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action[10]; and (3) a causal connection exists between the protected activity and the adverse action.'"[11] Cabral v. Brennan,

---

[9]Because the Court finds Plaintiff has not met the fourth element of his prima facie burden for a claim of hostile work environment, it pretermits discussion of Defendant's argument that summary judgment is warranted for Plaintiff's failure to carry the fifth element of his prima facie burden.

[10]In Title VII retaliation claims, "[f]or an employer's act to qualify as a materially adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Cabral v. Brennan, 853 F.3d 763, 767 (5th Cir.2017) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

[11]"Title VII retaliation claims must be proved according to traditional principles of but-for causation. . . ." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). "This requires proof that the

853 F.3d 763, 766–67 (5th Cir.2017) (quoting Jenkins, 784 F.3d at 269).

Defendant asserts Plaintiff's claim of retaliation must be dismissed, because Plaintiff cannot meet the third element of his prima facie burden. Doc. 51-1 at 23-24. In support, Defendant argues Plaintiff cannot establish a "causal connection between Plaintiff's April 24th written complaint and his termination," because the record evidence shows that the supervisor who terminated Plaintiff on September 13, 2013 had no knowledge that Plaintiff submitted a complaint to Human Resources on April 24, 2013. Id. at 24; see also Doc. 51-8 at ¶ 25; Doc. 51-10 at 9-10. Defendant additionally points to Plaintiff's deposition testimony, wherein Plaintiff admitted he does not know if his supervisor was aware that he filed a complaint with Human Resources. Id. at 24.

Fifth Circuit jurisprudence requires evidence of knowledge of the protected activity on the part of the decision maker, as well as temporal proximity between the protected activity and the adverse employment action." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997); see also Gorman v. Verizon Wireless Texas, L.L.C., 753 F.3d 165, 171 (5th Cir. 2014) (Plaintiff failed to establish her prima facie case of retaliation where close temporal proximity was absent, in that plaintiff was fired ten months after filing her complaint, and because the executive who fired her was unaware of the complaint). Because Plaintiff has failed to demonstrate a genuine dispute of material fact as to causation between his complaint and his termination, Plaintiff's prima facie case fails and his claim of retaliation must be dismissed.

F. **Negligent Hiring**

Finally, Plaintiff asserts a claim of "negligent hiring" pursuant to Louisiana state law. Doc.

---

unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id.

1 at ¶¶ 13-14, 46. Specifically, Plaintiff contends Defendant was "negligent in its hiring and supervising of its employees by hiring and allowing within its workforce an employee such as Menard." Id. at ¶ 14. A claim of negligent hiring is a delictual claim "subject to a liberative prescription of one year." La. Civ. Code art. 3492; see also Roberts v. Benoit, 605 So.2d 1032, 1044 (La. 1991). "This prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. In this matter, Plaintiff alleges Menard threatened to strike him on April 4, 2013. Doc. 1 at ¶ 12. Because Plaintiff did not file this lawsuit until January 23, 2016, Plaintiff's claim for negligent hiring is barred by prescription and must be dismissed.

IV. **Conclusion**

For the reasons set forth above, Defendant's Motion for Reconsideration, or Alternatively, Motion for Summary Judgment (Doc. 51) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** to the extent it seeks reconsideration and reversal of the Court's September 6, 2016 Judgement; the motion is **GRANTED** to the extent it seeks summary judgment in favor of Defendant. Accordingly, all claims asserted by Plaintiff in this matter are hereby **DISMISSED WITH PREJUDICE**.

ALEXANDRIA, LOUISIANA, this 7TH day of March, 2018.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE